UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **DAVID LORD,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No.: 3:23-cv-1414-LCB |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION & ORDER

David Lord filed a complaint seeking judicial review of an adverse decision of the Commissioner of the Social Security Administration ("the Commissioner") pursuant to 42 U.S.C. § 405(g). (Doc. 1). The Commissioner filed an answer and a copy of the administrative record. (Doc. 4). Both Lord and the Commissioner have fully briefed the relevant issues, and Lord's case is ripe for review. For the following reasons, the Commissioner's final decision is due to be affirmed.

**I.    Background**

Lord protectively filed an application for a period of disability and disability insurance benefits on January 4, 2022, alleging disability beginning October 3, 2020. The claim was denied initially on September 22, 2021, and upon reconsideration on September 28, 2022. Lord then requested a hearing before an

Administrative Law Judge ("ALJ"), which was held on February 27, 2023. Lord testified at the hearing, as did an impartial vocational expert ("VE"). The ALJ subsequently issued an unfavorable decision. The Appeals Council denied Lord's request for review, and the ALJ's decision became the Commissioner's final decision. This lawsuit followed.

## II.     The ALJ's decision

After the hearing, the ALJ issued a written opinion explaining her decision. (Tr. at 17-28). In issuing her decision, the ALJ followed the five-step evaluation process set out by the Social Security Administration. *See* 20 CFR 416.920(a). The steps are followed in order and, if it is determined that the claimant is or is not disabled at a particular step of the evaluation process, the ALJ will not proceed to the next step.

The first step requires the ALJ to determine whether the claimant is engaging in substantial gainful activity, which is defined as work involving significant physical or mental activities usually done for pay or profit. If a claimant is engaged in substantial gainful activity, she is not disabled, and the inquiry stops. Otherwise, the ALJ will proceed to step two. In the present case, the ALJ found that Lord did not engage in substantial gainful activity during the relevant time period. (Tr. at 19). Accordingly, the ALJ moved on to the second step of the evaluation.

At step two, an ALJ is to determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR 416.920(c). An impairment is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities…." *Id*. If a claimant does not have a severe impairment, he is not disabled, and the inquiry ends. If he does have a severe impairment, the ALJ will proceed to the third step. In the present case, the ALJ found that Lord had the following severe impairments: "lumbar spinal stenosis; vertebral fractures; psoriatic arthritis affecting the cervical spine; and degenerative disc disease of the cervical spine" (Tr. at 19), citing 20 CFR 404.1520(c). The ALJ found the following conditions to be nonsevere: hypertension, hyperlipidemia, chronic ischemic coronary artery disease, gastroesophageal reflux disease, depression, anxiety, ankylosis spondylitis, carpal tunnel syndrome, and obstructive sleep apnea. (Tr. at 20).

At the third step, an ALJ determines whether the claimant's impairments or combination thereof are of a severity to meet or medically equal the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix I. If the claimant's impairment or impairments meet or equal a listed impairment, then the claimant is disabled, and the evaluation ends. Otherwise, the ALJ proceeds to the next step. In this case, the ALJ found that Lord's impairments did not meet or medically equal any of the listed criteria. Specifically, the ALJ reviewed Listing 1.15, which

focuses on disorders of the skeletal spine resulting in compromise of a nerve root(s) and Listing 1.16, which focuses on lumbar spinal stenosis resulting in compromise of the cauda equina. (Tr. at 21-22). After reviewing the evidence, the ALJ concluded that there was no evidence of medical findings that were the same or equivalent to those or any other listed impairment. Therefore, the ALJ proceeded to step four.

Step four of the evaluation requires an ALJ to first determine the claimant's residual functional capacity ("RFC"), and whether he has the RFC to perform the requirements of any past relevant work. 20 CFR 416.920(f). The term "past relevant work" means work performed within the last 15 years prior to the alleged date of onset. If a claimant has the RFC to perform past relevant work, he is not disabled, and the evaluation stops. Otherwise, the evaluation proceeds to the final step. In Lord's case, the ALJ found that he had the residual functional capacity to

> to perform light work as defined in 20 CFR 404.1567(b) except can stand and or walk with normal breaks for six hours in an eight hour workday; sit with normal breaks for six hours in an eight hour workday; can occasionally climb ramps and stairs, never climb ladders, ropes and scaffolds, frequently balance on level surfaces and terrain, occasionally stoop, kneel, crouch and crawl; can tolerate occasional exposure to extreme cold, extreme heat, vibrations, fumes, odors, dusts, gases and poor ventilation; can never work around unprotected heights, moving machinery, or large, open bodies of water; and can only occasionally reach overhead with the bilateral upper extremities, or turn his head from side to side or up and down.

(Tr. at 22).  Given this RFC, the ALJ determined that Lord was unable to perform his past relevant work as a firefighter or airplane pilot.  (Tr. at 26).  However, the ALJ found that considering Lord's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that he can perform.  (Tr. at 26).  Specifically, she determined that he could work as a merchandise marker, a sales attendant, or a cashier.  (Tr. at 27).  This finding was based in part on testimony from an impartial vocational expert who testified at Lord's hearing.

      Based on the findings above, the ALJ determined that Lord was not disabled as defined by the Social Security Administration.  *Id.*

### III.  Standard of Review

      This Court must determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id*. (internal citation and quotation marks omitted).  "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  Thus, while the Court must scrutinize the record as a whole, the Court must affirm if the decision is

supported by substantial evidence, even if the evidence preponderates against the Commissioner's findings. *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264 (11th Cir. 2015); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"To establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test by showing (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Zuba-Ingram v. Commissioner of Social Security*, 600 Fed. Appx. 650, 656 (11th Cir. 2015), quoting *Booth v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). Further, if the claimant establishes he has an impairment that could reasonably be expected to produce his alleged symptoms, then the intensity and persistence of his alleged symptoms and their effect on his ability to work must be evaluated. 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). When evaluating a claimant's statements regarding the intensity, persistence or limiting effects his symptoms, ALJs consider all the evidence, objective and subjective. 20 C.F.R. §§404.1529, 416.929. ALJs may consider the nature of the claimant's symptoms, the effectiveness of medication, a claimant's treatment, a claimant's daily activities, measures a claimant takes to relieve symptoms, and any conflicts between the claimant's

statements and other evidence. 20 C.F.R. §§ 404.1529(c) (3)-(4), 416.929(c)(3)-(4).

## IV. Lord's Arguments

Lord raises two arguments in his brief to this Court. First, he contends that the ALJ erred in her determination that his ankylosing spondylitis was a non-severe impairment. Second, he argues that the ALJ's finding that he had the RFC to perform a range of light work was not supported by substantial evidence. Neither argument entitles Lord to relief.

### A. There was no error in the ALJ's finding regarding the severity of Lord's ankylosing spondylitis.

Lord correctly notes that the ALJ found his ankylosing spondylitis to be a non-severe condition, s*ee* (Tr. at 20), and points to many portions of the record he contends contradicts this finding. However, there can be no error here because the ALJ found that Lord had other conditions that were severe. The Eleventh Circuit discussed this issue in *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014):

> As we have described, step two of the sequential evaluation acts as a "screening" or "filter" to eliminate groundless claims. *See Stratton* [v. *Bowen*,] 827 F.2d [1447, 1452 (11th Cir. 1987)]; *Jamison* [v. Bowen], 814 F.2d [585, 588 (11th Cir. 1987)]. Accordingly, we have recognized that step two requires only a finding of "at least one" severe impairment to continue on to the later steps. *See Jamison*, 814 F.2d at 588. Further, the regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. *See* 20

C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson–Brown is correct that her additional impairments were "severe," the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below.

The same is true here.

The Court in *Tuggerson-Brown* further noted that "[w]hile the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments, regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation." *Id.* A review of the ALJ's opinion reveals that she did indeed consider all of Lord's conditions, both severe and non-severe, in the latter steps of her analysis. *See* (Tr. at 19-25). Therefore, Lord has shown no error at step two that would entitle him to relief. *See also Hearn v. Comm'r, Soc. Sec. Admin.*, 619 F. App'x 892, 895 (11th Cir. 2015) ("Any error at step two was harmless because the ALJ found in Hearn's favor as to impairment, and the ALJ properly noted that he considered Hearn's impairments in the later steps.") (internal citations omitted).

### B. The ALJ's RFC determination was supported by substantial evidence.

Lord next argues that the ALJ's finding that he had the RFC to perform a range of light work was not supported by substantial evidence. He contends that

the ALJ failed to properly evaluate the credibility of his complaints consistent with the Regulations and the Eleventh Circuit Pain Standard.

Lord alleged disability primarily due to limitations from debilitating pain in his neck and back. He testified that he does not have any real range of motion in his neck and has constant neck pain. (R.45, 46). According to Lord, his psoriatic arthritis flares up in different parts of his body. (R.47). He also testified he cannot look up at all, and movement in his neck is basically nonexistent. (R.62). Despite this testimony, and the ALJ's determination that Lord's medically determinable impairments could reasonably be expected to cause the alleged symptoms, she ultimately found that his statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Tr. at 23).

A review of the ALJ's decision indicates that this conclusion was based, in part, on the ALJ's finding that the limited extent of treatment sought, combined with the relief obtained from that treatment, undermined Lord's subjective complaints regarding the intensity, severity, and persistence of his symptoms. *Id*. Specifically, the ALJ noted that Lord's surgery, medication, and physical therapy helped him significantly. (Tr. at 23). According to the ALJ, "if the claimant's allegations about the disabling extent of his limitations were consistent with the record, the record would have demonstrated more extensive treatment, with less

9

actual relief brought by that treatment." *Id.* She noted a bevvy of normal findings from various physical examinations documenting his ability to stand and sit without issue and normal strength and range of motion. (Tr. 23-24). The ALJ also found that the alleged severity of Lord's symptoms were inconsistent with his "ability to go on hikes with a heavy pack". (Tr. at 24), citing (Tr. at 1958) (November 2020 cardiology record from North Alabama Medical Center indicating that Lord presented with cardiac symptoms after going on a "strenuous" hike that morning while "carrying a 40-pound pack"). The ALJ noted that this hike occurred during the time he claimed to be disabled and determined that this record indicated Lord had more mobility than alleged.

Lord takes issue with this finding and points to other evidence suggesting a long history of debilitating symptoms related to his psoriatic arthritis and ankylosing spondylitis. *See* (Doc. 8 at 11), citing (Tr. 377) (records from February 2020 documenting reports of progressively worsening neck pain and the inability to move his neck and could only move his eyes); (Tr. at 378) (physical examination of cervical spine showed decreased range of motion and cervical spine was noted to be "pretty fused all over."); (Tr. at 778) (records show completion of one month of chiropractor visits with traction and one month of physical therapy with no improvement noted in range of motion of his neck); (Tr. at 571) (records from July 2020 noted that symptoms included chronic neck pain and decreased

10

range of motion); (Tr. at 439) (cervical spine x-rays documented spondylosis, multi-level arthritic changes including spurring and loss of disc height); (Tr. at 2089) (referred to a neurologist with Lord reporting decreased range of motion in neck and stating that he must reposition his entire body due to inability to turn his neck); (Tr. at 2090) (received Botox injections and noted limited range of motion); (Tr. at 2200, 2202, and 2170) (noting that although the Botox provided relief, it was temporary).  The records Lord cites indicate that while treatment does provide relief, it is often short lived.

This evidence certainly supports Lord's claim that he experiences pain and a decreased range of motion.  However, the ALJ acknowledged that he had consistent pain that "limits him in some way."  (Tr. at 23).  However, she accounted for this in her assessment of Lord's RFC by limiting him to occasional overhead reaching and occasional ability to turn his head from side to side and up and down (Tr. at 22).  Lord is essentially asking this Court to reweigh the evidence and place greater emphasis on the records he cites—many of which are not objective medical tests but rather his own self-reported symptoms.  But this would be improper.  As noted above, this Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence.  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Moreover, the ALJ's consideration of Lord's activities in evaluating his symptoms was not improper. Although not dispositive, a claimant's activities may show that his symptoms are not as limiting as alleged. See 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 82 Fed. Reg. at 49,465; *Dyer*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987); *Stacy v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 1005, 1011 (11th Cir. 2016). While Lord points out that the strenuous hike noted in his medical records was an isolated incident that caused him to have to seek medical care, the care he sought was for cardiac symptoms, not neck or back pain. Thus, the ALJ's consideration of that activity as evidence that Lord was not as limited as he suggests was not improper.

In addition to the findings noted above, the ALJ also considered prior administrative medical findings from State agency consultants. (Tr. at 24-25). It is clear that the ALJ did not simply adopt these findings wholesale given that she found Dr. Jeaudine Hill's findings only partially persuasive because she did not "adequately address the limitations that [Lord] has in terms of movement of his neck." (Tr. at 24). Overall, this Court finds that the ALJ properly considered the entire record and provided substantial evidence supporting her assessment of Lord's subjective allegations and his RFC. *See Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings.").

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ's decision was supported by substantial evidence. Accordingly, the Commissioner's final decision is **AFFIRMED**.

**DONE** and **ORDERED** March 24, 2025.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE